**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| CARLOS COLIN-LUJAN,<br>  Fed. Reg. No. 14176-280,<br><br>  Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>  Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br>EP-11-CV-40-KC<br>EP-08-CR-1124-KC |

## ORDER

On this day, the Court considered Petitioner Carlos Colin-Lujan's Motion to Vacate, ECF No. 109. For the reasons set forth herein, the Motion is **DENIED**.

**I.     BACKGROUND**

On April 16, 2008, the grand jury in the Western District of Texas returned an indictment against Petitioner Carlos Colin-Lujan ("Colin-Lujan") charging him with conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846, and attempt to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. Indictment 1, ECF No. 14. On July 25, 2008, pursuant to a written plea agreement ("Plea Agreement"), Colin-Lujan entered a plea of guilty to Count One of the Indictment, the conspiracy charge. Plea Agreement 1, ECF No. 54. On October 22, 2008, the Court sentenced Colin-Lujan to 108 months of incarceration. J. in a Criminal Case 2, ECF No. 71. On October 27, 2008, Colin-Lujan filed his Notice of Appeal, ECF No. 72, and the Fifth Circuit affirmed, finding that this Court did not abuse its discretion and committed no error in sentencing Colin-

Lujan. J./Mandate 2, ECF No. 107. On December 8, 2009, Colin-Lujan filed his petition for writ of certiorari with the United States Supreme Court, which the Supreme Court denied on January 19, 2010. Gov't Mot. to Dismiss, and in the Alternative, Resp. ("Response") Exs. H, I ECF No. 113. Colin-Lujan filed the instant Motion to Vacate ("Motion") on Janary 31, 2011. On April, 7, 2011, the government filed its Response. On May 11, 2011, Petitioner filed his "Traverse to the Government's Motion to Dismiss" ("Reply"). ECF No. 114.

II. **DISCUSSION**

    A. **Standards**

        1. **28 U.S.C. § 2255**

After a defendant has been convicted and has exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)). Accordingly, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)). Typically, before a court will grant relief pursuant to § 2255, the movant must establish: "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

2

Moreover, a collateral challenge to a conviction or sentence should not serve as a substitute for a direct appeal. *Frady*, 456 U.S. at 165; *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991). When raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief, a movant must either: (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error, or (2) show that he is "actually innocent" of the crime for which he was convicted. *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999). The cause and actual prejudice standard is "significantly more rigorous than even the plain error standard . . . applied on direct appeal." *Gaudet*, 81 F.3d at 589. If the movant does not meet either burden, then he is procedurally barred from attacking his conviction or sentence. *United States v. Drobny*, 955 F.2d 990, 994-95 (5th Cir. 1992). This procedural bar does not apply, however, to claims alleging ineffective assistance of counsel. *See Massaro v. United States*, 538 U.S. 500, 508 (2003).

### 2. Pro Se Pleadings

A court reviews pro se pleadings under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). At the same time, however, parties proceeding pro se are still required to provide sufficient facts in support of their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient . . . ." *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)).

With these principles in mind, the Court turns to the merits of Colin-Lujan's claims of ineffective assistance of counsel and the government's breach of the Plea Agreement.

### B. Ineffective Assistance of Counsel

Colin-Lujan presents two arguments in support of his claim that his counsel provided ineffective assistance: 1) that his attorney induced him to plead guilty; and 2) that his attorney did not fully investigate the case or engage in sufficient discovery. Mot. 5.

The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions. U.S. Const. amend. VI. Moreover, "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "[I]neffective assistance claims are ordinarily brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct appeal." *Gaudet*, 81 F.3d at 589 n.5. To merit relief on an ineffective assistance of counsel claim, a movant must demonstrate both (1) that his "counsel's performance was deficient[,]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). A failure to establish either prong of this test requires a court to find that counsel's performance was constitutionally effective. *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

The test's performance prong centers on whether counsel's assistance was reasonable, considering all the circumstances at the time of counsel's conduct. *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). In order to obtain relief, a movant must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In assessing whether a particular counsel's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A deficiency in counsel's performance, even if professionally unreasonable, does not equal ineffective assistance of counsel; the movant must also demonstrate actual prejudice. *See id.* at 691-92 ("The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."). The test's prejudice prong requires the movant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

1.  **Inducement to plead guilty**

Colin-Lujan argues that he received ineffective assistance of counsel because his attorney coerced him to plead guilty. Mot. 5; Reply 2. The government contends that Colin-Lujan's

claim is deficient because it is conclusory and because he affirmed in open court that he entered his plea freely and voluntarily. Resp. 9-10.[1]

A clear and unambiguous plea agreement is afforded great evidentiary weight. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994). A defendant's solemn declarations in open court are presumed to be true, and normally a defendant may not recant sworn testimony at a plea proceeding. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). Such declarations,

---

[1] The government also argues that Colin-Lujan's entire Motion is time-barred because he did not state in the Motion that he had prepaid first-class postage for the mailing of the Motion and, therefore, should not receive the benefit of the mailbox rule. Gov't Resp. 3. Rule 3(d) the Rules Governing Section 2254 Cases states:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

Rules Governing § 2254 Cases 3(d)

Colin-Lujan used the Motion to Vacate form provided by the Court. The form includes a designated space for the prisoner to include the date that he placed the motion to vacate in the prison mail system; however, this version of the form does not provide a space for certification that first-class postage was prepaid.

Colin-Lujan completed and signed the form and certified that he placed it in the prison mailing system on January 13, 2011. Mot. 14. He declared pursuant to 28 U.S.C. § 1746 that the information submitted was true and correct. *Id.* The District Clerk received the Motion on January 31, 2011. *See* Mot. 1. Because the one-year statute of limitations applicable to motions to vacate, *see* 28 U.S.C. § 2255(f)(1), expired on January 19, 2011, one year after the judgment of conviction became final, this Motion is timely only if the mailbox rule applies. As the government asserts, Colin-Lujan did not declare that he prepaid the postage. Nevertheless, because Colin-Lujan has fully completed the form created and provided by the Court, the Court will not hold this missing information against him. Colin-Lujan receives the benefit of the mailbox rule and the Motion is timely.

particularly if related to a plea agreement are a "formidable barrier" to collateral attack by the defendant. *Id.*

In this case, Colin-Lujan signed and entered into a written Plea Agreement. *See* Plea Agreement At the plea hearing, as the government contends, Colin-Lujan stated that he had reviewed the agreement with his attorney before he signed it, and that the document contained all of the agreements he made with the United States Attorney. Resp. Ex. N ("Plea Transcript.") 9-10. Colin-Lujan also asserted in open court that he was not coerced or induced into pleading guilty or signing the agreement.[2] It is clear from a review of the admonishments given to Colin-

---

[2] The transcript shows:
> THE COURT: So the first thing I want to tell both you is that you don't have to plead guilty here this afternoon. If you believe you are innocent of these, charges, you should not be entering a plea of guilty. Do you understand that, Mr. Colin?
> DEFENDANT COLIN-LUJAN: Yes, ma'am.

Plea Tr. 6.

> THE COURT: If you came into the courtroom with the idea of pleading guilty, and for whatever reason you change your mind, you just decide you don't want to go through with the plea, that's fine with me. If you don't want to plead guilty, you don't have to plead guilty. You should not plead guilty unless that is what you really want to do in your particular case. I'm explaining all of that to each of you because once we go through this plea, once I explain to you the rights that you have, and the consequences of entering that plea, once you actually enter your plea, and we adjourn to come back another day for sentencing, gentlemen, at that point it becomes very difficult to withdraw this plea. So you should not plead guilty unless that's what you really want to do in your particular case. Do you understand that, Mr. Colin?
> DEFENDANT COLIN-LUJAN: Yes, ma'am.

*Id*. at 6-7

> THE COURT: Has anybody threatened either one of you or forced you to enter a plea here today against your will? Mr. Colin?
> DEFENDANT COLIN-LUJAN: No, ma'am.

*Id*. at 8

THE COURT: Are each of you satisfied with the assistance your attorney has

Lujan by the Court during the plea colloquy that Colin-Lujan was fully advised of his rights and that he entered into the plea knowingly and voluntarily. Colin-Lujan has not established, or even alleged with any specificity, that his plea was involuntary and that he was induced to plead guilty. He has not shown deficient conduct by his attorney nor prejudice. *See Strickland*, 466 U.S. at 687; *see also Motley*, 18 F.3d at 1226. Accordingly, he cannot prevail on his inducement to plead guilty claim. *See Cervantes*, 132 F.3d at 1110. This claim is denied.

### 2. Failure to investigate and argue for minor role

Next Colin-Lujan argues that his attorney's assistance was ineffective because the attorney failed to present the testimony of co-defendants as well as government agents which would have demonstrated to the Court that Colin-Lujan played a minor role in the conspiracy and was entitled to safety valve reduction. Reply 3-5. He also argues that his lawyer was unaware until sentencing that he was the target of a reverse sting by the government, also showing that his lawyer was unprepared to argue a minor role reduction. *Id.* at 4-5. All of this, he asserts, would have led to a lesser sentence.[3] *Id.*

---

given you in your case? Mr. Colin?
DEFENDANT COLIN-LUJAN: Yes, ma'am.
THE COURT: Do either of you have any complaints about anything your attorney has done or failed to do in representing you in your case? Mr. Colin?
DEFENDANT COLIN-LUJAN: No, ma'am.

*Id.*

[3] To the extent Colin-Lujan challenges the calculation of his sentence, the court's technical application of the advisory sentencing guidelines does not give rise to a constitutional claim cognizable under § 2255. *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir.1994); *United States v. Faubion*, 19 F.3d 226, 232-22 (5th Cir. 1994). As such, to the extent he alleges such a claim, no relief would be available.

"Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified to are largely speculative. Where the only evidence of a missing witness's testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson*, 238 F.3d 635-36 (5th Cir. 2001) (quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986)). In order to succeed on a claim of ineffective assistance of counsel for failure to call a witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citing *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008)). Here, Colin-Lujan only generally refers to two groups of witnesses whom he believes should have been called, government agents and co-defendants, but he does not name them individually. He does not show that these witnesses were available to testify, or that they would have done so.

Colin-Lujan asserts that these witnesses could testify that he was brought into the scheme shortly before the events at issue took place to support his claim that he is entitled to minor role, but he provides no further information regarding their possible testimony. It is unclear his how this testimony about Colin-Lujan's supposed late entry into the conspiracy would support a finding of minor role. And, the record does not support this contention. The factual basis of Colin-Lujan's Plea Agreement, to which Colin-Lujan admitted, shows that he was associated with two cocaine distribution organizations, in New York and Florida, and that he arranged for two sales of fifty kilograms each of cocaine to these two organizations over the one-month period

of his involvement in this conspiracy, spanning from February 28, 2008, to March 28, 2008.  Plea Agreement 13-15.  While Colin-Lujan claims in his Motion to Vacate that these witnesses would testify that he entered the conspiracy late, he does not explain how this testimony would be favorable in light of the admitted facts showing the degree of his involvement in arranging for the sale of the cocaine to drug traffickers in New York and Miami, and negotiating the terms of the deal.  Furthermore, he does not explain how his one month involvement in this conspiracy should amount to a last minute involvement.  Thus, he has not satisfied the stringent requirements of a failure to call a witness and he has not shown that his counsel was ineffective.  *See Day*, 566 F.3d at 538.

To the extent Colin-Lujan challenges his attorney's failure to investigate evidence other than witnesses, the Court finds the challenge lacking as well.  "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).  A defendant must also show how this investigation would have helped him.  *Id.*  Additionally, there is no presumption of prejudice based on a failure to investigate.  *Woodard v. Collins*, 898 F.2d 1027, 1029 (5th Cir. 1990).  A defendant must demonstrate that this evidence that was not investigated would have been exculpatory or that it is of such a nature to undermine confidence in the outcome of the defendant's case.  *United States v. Lewis*, 786 F.2d 1278, 1283 (5th Cir. 1986).

Other than the witness testimony discussed above, Colin-Lujan makes no mention of the evidence that would have resulted from an investigation nor how this missing evidence would

have been favorable to his case. These vague, unsubstantiated claims are insufficient. *See United States v. Holmes*, 406 F.3d 337, 361 (5th Cir. 2005) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.") (quoting *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998)). Thus, Colin-Lujan has not shown that his attorney was ineffective for failing to investigate evidence and witnesses.

### C. Plea Agreement Not Binding

Next, Colin-Lujan argues that the government breached the Plea Agreement because he did not receive a minor role adjustment or safety valve reductions. Mot. 6.; Reply 2, 6-7. He also argues that the Plea Agreement is not binding. Mot. 6.; Reply 2, 6-7.

Relief under § 2255 is only available to remedy constitutional errors and other errors "that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (citing *Faubion*, 19 F.3d at 233). Unless a petitioner can demonstrate "cause and prejudice," that is, "cause" for failing to have raised the issues presented in a § 2255 petition in a prior direct appeal, and actual "prejudice" resulting from the alleged violations of law, a petitioner is barred from presenting the claims for collateral review. *United States v. Patton*, 40 F.3d 774, 776 (5th Cir. 1995).

Colin-Lujan's complaint about a breach of the Plea Agreement, or its alleged non-binding nature, was not raised on direct appeal. *See* Gov't Ex. E. Therefore, he is barred from raising such claims in a § 2255 motion. *See United States v. Sullivan*, 241 F. App'x 217, 218 (5th Cir. 2007) (citing *United States v. Lopez*, 248 F.3d 427, 433 (5th Cir. 2001)). Further, Colin-Lujan has not shown cause for failing to raise these claims on direct appeal; nor has he alleged actual

innocence or manifest injustice to excuse his failure to raise claims pertaining to the Plea Agreement on his direct appeal. *See Lopez*, 248 F.3d at 433; *Torres*, 163 F.3d at 911. For these reasons, Colin-Lujan's allegations that the government breached the Plea Agreement and that agreement is not binding are procedurally barred. Nevertheless, the Court addresses the claims on the merits.

        1.      **Breach of Plea Agreement**

Colin-Lujan asserts "the government breached the terms of the plea agreement with petitioner because petitioner did not receive the minor role and sfaety-valve [sic] reductions, as they were prescribed in the plea agreement that petitioner entered with the government." Reply 6.

"A plea agreement is interpreted in accordance with general principles of contract law." *United States v. Harper*, 643 F.3d 135, 139 (5th Cir. 2011) (citing *United States v. Cantu*, 185 F.3d 298, 302 (5th Cir. 1999)). "If a defendant pleads guilty as part of a plea agreement, the Government must strictly adhere to the terms and conditions of its promises in the agreement." *United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008) (citations omitted). "[A] plea agreement is construed strictly against the Government as the drafter. To assess whether a plea agreement has been violated, this court considers whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement." *Id.*

Contrary to Colin-Lujan's claim, nothing in the agreement guaranteed that Colin-Lujan would receive a minor role adjustment or safety valve reduction. The Court has reviewed the Plea Agreement and the Court finds no unconditional promise by the government that Colin-

Lujan would receive a minor role adjustment or safety valve reduction. Indeed, the Plea Agreement explicitly states "[t]he Government does not oppose an adjustment for 'minor role' if the evidence supports such finding." Plea Agreement 3. With regard to safety valve, the Plea Agreement provides "[t]he Defendant understands that the award of any such adjustment ultimately remains in the Court's discretion, and the Court makes the ultimate determination of whether the Defendant has met the requirements." *Id.* Based on these terms, the government did not promise these sentencing adjustments. The government's conduct was not in breach of the Plea Agreement and was "consistent with the defendant's reasonable understanding of the agreement." *See United States v. Sanchez-Alvarez*, 310 F. App'x 653, 654-55 (5th Cir. 2009) (quoting *Cantu*, 185 F.3d at 304). Colin-Lujan's claim of breach of plea agreement for failure to receive minor role or safety valve adjustments fails.

To the extent Colin-Lujan is arguing that the government breached other promises made outside of the Plea Agreeement, such claims also fail.

When it is alleged that a written plea agreement does not set out an unfulfilled promise, and such promise is inconsistent with representations made in open court, the defendant faces a heavy burden to obtain relief under § 2255 on a claimed involuntary plea. *See Cervantes*, 132 F.3d at 1110 (relying on the presumption in *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)); *Abreo*, 30 F.3d at 32 (presumption of regularity of court documents and the great weight accorded to them by the courts).

If Colin-Lujan contends that the Plea Agreement was not the complete recounting of the government's promises to him, he has not demonstrated that the government breached some

other promise. Colin-Lujan's own sworn testimony at the time he entered his plea flatly contradicts his claim that he was induced into entering into the Plea Agreement with the promise of a downward sentence adjustment.[4] Plea Tr. 10. Accordingly, Colin-Lujan has not demonstrated the breach of any other promise or agreement.. In short, the record is devoid of any evidence of a promise that Colin-Lujan would receive a downward sentence adjustment. Because there was no such promise, no breach occurred.

### 2. Government's opposition to minor role and safety valve

Colin-Lujan also argues that the government improperly opposed his sentencing reduction for minor role and safety valve at sentencing because it promised not to oppose the reductions in the Plea Agreement. Reply 6-7. As discussed above, with regard to minor role, the Plea Agreement states "[t]he Government does not oppose an adjustment for 'minor role' if the evidence supports such finding." Plea Agreement 3. The government did not agree to never oppose the minor role adjustment; it only agreed to not oppose a minor role adjustment "if the evidence supports such finding."

Moreover, at the sentencing hearing, the Court expressed its doubts that Colin-Lujan warranted a minor role adjustment and sought additional information from the government. Sentencing Tr. 9-11. This discussion culminated with the Court asking, "So on behalf of the

---

[4]     THE COURT: Has anyone made any other or different promise to you
        to get you to plead guilty here today?

        DEFENDANT COLIN-LUJAN: No, ma'am.
Plea Tr. at 10

14

Government, Mr. Garcia, can you enlighten me any more about this offense? I certainly have some information. But I don't have the information the Government has." *Id.* at 11. In response to the Court's concerns and direct question that the government stated:

> The information in the PSR and what you articulated is pretty much the assessment you made concerning how a person like this and is his role has to be based on his ability to negotiate versus him transporting a load is a higher role than a mule. And so the Government would have to agree with the Court's assessment of what you just articulated. I think the response prepared by [the probation department] is correct that he deserves neither an aggravated nor minor role adjustment.

*Id.* at 11-12.

This record demonstrates that the government commented on the applicability of a minor role adjustment only in response to the Court's questioning whether the evidence supported the adjustment. Because the government's promise not to oppose minor role was conditional, and only required if the evidence supported it, the government did not breach the agreement. *See Cantu*, 185 F.3d at 304.

With regard to safety valve, the Plea Agreement provides "[t]he Defendant understands that the award of any such adjustment ultimately remains in the Court's discretion, and the Court makes the ultimate determination of whether the Defendant has met the requirements." *Id.* There is no mention of the government's agreement not to oppose a safety valve award; therefore, the government did not breach this part of the agreement either.

Finally, to the extent Colin-Lujan may allege ineffective assistance of counsel for failing to secure minor role and safety valve, the record does not support such contentions. Colin-Lujan's counsel argued vigorously for a finding of minor role at the sentencing hearing. Counsel

15

engaged in a lengthy discussion with the Assistant United States Attorney and the Court in the pursuit of a minor role adjustment. *See* Sentencing Tr. 3-6, 10-19. During that discussion, counsel repeatedly requested a minor role adjustment for his client describing the nature of his client's activities in the conspiracy and comparing this involvement to the nature of the involvement of the co-conspirators. *See id.* Colin-Lujan's attorney did not fail to seek a minor role adjustment, and, when the Court questioned the applicability of minor role in this case, counsel advocated zealously for the adjustment. This representation does not amount to ineffective assistance of counsel. *See United States v. Ronquillo*, 269 F. App'x 429, 430 (5th Cir. 2008) (finding no ineffective assistance when counsel objected to pre-sentence report and argued at sentencing that client was entitled to minor role adjustment); *see also United States v. Atanda*, 60 F.3d 196, 198 n.1 (5th Cir. 1995) (explaining that "a defendant is not entitled to a minor participant reduction unless he is substantially less culpable than the average participant" and "the fact that other co-defendants were more culpable does not automatically qualify a defendant for either minor or minimal participant status.") (citations omitted). Thus, to the extent he puts forward such an ineffective assistance claim on this basis, Colin-Lujan has not shown deficient performance on the part of counsel or prejudice from his actions, and the claim fails.

### D. Ineffective Assistance of Counsel on Appeal

Lastly, Petitioner asserts that he received ineffective assistance of counsel on appeal because his counsel failed to argue that his guilty plea was not binding due to the government's alleged breach of the Plea Agreement.

The Supreme Court's analysis in *Strickland* applies with equal force to claims of ineffective assistance of counsel on appeal. *See Amador v. Quarterman*, 458 F.3d 397, 411 (5th Cir. 2006) (citing *Mayabb v. Johnson*, 168 F.3d 863, 869 (5th Cir. 1999)); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000) (noting that a court applies the standard set forth in *Strickland* for claims of ineffective assistance of counsel on appeal). Further, the Fifth Circuit has held that when a court does not "find prejudice from the trial error, by extension, [it] cannot find prejudice from an appellate error predicated on the same issue." *Mayabb*, 168 F.3d at 869 (citing *Ricalday v. Procunier*, 736 F.2d 203, 208 (5th Cir. 1984)). Because Colin-Lujan has not shown prejudice from counsel's assistance, he cannot show that his appellate counsel provided ineffective assistance. *See Mayabb*, 168 F.3d at 869.

## III. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Further, appellate review of a habeas petition is limited to the issues on which a certificate of appealability is granted. *See Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir.1997) (holding that, in regard to the denial of relief in habeas corpus actions, the scope of appellate review is limited to the issues on which a certificate of appealability is granted). In other words, a certificate of appealability is granted or denied on an issue-by-issue basis, thereby limiting appellate review solely to those issues on which a certificate of appealability is granted. *See* 28 U.S.C.A. § 2253(c)(3) (setting forth the narrow scope of appellate review in habeas corpus matters); see also Lackey, 116 F.3d at 151 (holding that a certificate of appealability is granted on an issue-by-issue

basis, thereby limiting appellate review to those issues); *but see United States v. Kimler*, 150 F.3d 429, 431 & n. 1 (5th Cir.1998) (explaining that the Fifth Circuit may address an issue not certified by the district court if the movant makes (1) an explicit request and (2) a substantial showing of the denial of a constitutional right).

Although Colin-Lujan has not yet filed a notice of appeal, this Court nonetheless must address whether he is entitled to a certificate of appealability. *See* 28 U.S.C.A. § 2255 Proc. R. 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.")

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.A. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Here, Colin-Lujan's Motion fails because he has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court finds that it should deny a certificate of appealability.

## IV. CONCLUSION

For the reasons set forth above, the Motion, ECF No. 109, is **DENIED** and the case is **DISMISSED WITH PREJUDICE**. The Certificate of Appealability is **DENIED**. All pending motions are **DENIED** as moot.

The Clerk shall close the case.

**SO ORDERED.**

**SIGNED** on this 29th day of July, 2011.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE